IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BARBARA STREETER,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀CIVIL ACTION NO. 2:04CV418-W
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀⠀⠀⠀⠀(WO)
THE BRIDGE, INC.,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀)

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara Streeter commenced this action on April 29, 2004 against her former employer, The Bridge, Inc. ("The Bridge"). Plaintiff, a black female, alleges that defendant discriminated against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964 when it subjected her to disparate working conditions and terminated her employment and, further, that her termination was in retaliation for her complaints of discrimination. This action is presently before the court on the motion for summary judgment filed by defendant on February 15, 2005 (Doc. # 16). Upon consideration of the motion, the court concludes that it is due to be granted.

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of genuine issue of material fact. Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir.

1993).  In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that if a party

opposing summary judgment "fails to make a showing sufficient to establish the existence

of an element essential to their party's case, and on which their party will bear the burden

of proof at trial," summary judgment shall be granted.

> [W]here the moving party will bear the burden of proof at trial on a
> dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go
> beyond the pleadings and by . . . affidavits, or by the "depositions, answers
> to interrogatories, and admissions on file," designate "specific facts
> showing that there is a genuine issue for trial . . . We do not mean that the
> nonmoving party must produce evidence in a form that would be admissible
> at trial in order to avoid summary judgment . . . Rule 56(e) permits a proper
> summary judgment motion to be opposed by any of the kinds of evidentiary
> materials listed in Rule 56 except the mere pleadings themselves . . . ."

Id. at 324.

For summary judgment purposes, an issue of fact is "material" if it is a legal

element of the claim, as identified by the substantive law governing the case, such that its

presence or absence might affect the outcome of the suit.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" if the record taken as a

whole could lead a rational trier of fact to find for the nonmoving party.  Matsushita

Electric Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court

must view the evidence, and all factual inferences properly drawn from the evidence, in

the light most favorable to the nonmoving party.  Welch v. Celotex Corp., 951 F.2d 1235,

1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).

It is improper for this court to weigh conflicting evidence or make credibility

determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

### BACKGROUND

Plaintiff Barbara Streeter worked for the Eufaula Youth Center from 1997 until November 15, 2002, the date of her termination. The Eufaula Youth Center (the "Youth Center") is a medium security correctional facility located in Barbour County, Alabama. The Youth Center provides drug treatment services as well as behavioral modification, education, and recreation. The facility itself is owned by the State of Alabama; however the management and services provided by the facility are performed by defendant, The Bridge, a contracted agency. Plaintiff began her career at the Youth Center in 1997 as a Youth Counselor. Plaintiff was promoted to the position of Security Officer, and finally to the position of Administrative Assistant. During her tenure at the Youth Center, Plaintiff was employed by three different contract operators, including Children's Comprehensive Services, First Corrections Corporation, and The Bridge. The Bridge assumed operations at the Youth Center on or about October 1, 2002. Plaintiff, along with each employee of the previous contract operator, was interviewed by the Campus

Coordinator, Phyllis Leasure, to determine if retention would be appropriate.  Leasure recommended that plaintiff be retained and, from October 1, 2002 until November 15, 2002, she worked as the Administrative Assistant to Diane Allen, the Assistant Campus Coordinator.  Plaintiff, like all employees at The Bridge, was designated an "at will" employee, subject to termination at any time and for any reason.  (Streeter depo., p. 67). All employees retained by The Bridge, including plaintiff, were classified as "probationary employees."  The purpose of this probationary period was to allow both the employee and The Bridge to determine if the assigned job was going to be a suitable match.

Plaintiff's duties as an Administrative Assistant included, *inter alia*, "general office tasks including filing, basic organization, typing, computer data entry, faxing, dictation . . ."  (Defendant's Exhibit I, job description).  Plaintiff's job description form also included a catch-all provision that provided that she was to perform "[a]ny <u>additional duties or tasks</u> assigned by the Assistant Coordinator and/or Coordinator and/or his/her designee."  (<u>Id</u>.)(emphasis in original).

Plaintiff alleges that certain aspects of her job required her to use a computer and that she was never assigned a computer.  Instead, plaintiff had to locate and use an available computer around the office to perform certain office tasks.  (Streeter depo., pp. 87-97).  Plaintiff was also asked by Leasure to make the initial pot of coffee in the mornings.  According to Leasure, this was done because plaintiff was the first to arrive at

work in the mornings before she herself arrived, and before the arrival of the other Administrative Assistant, Mayrene Martin.[1]  Plaintiff did make the coffee as requested, but felt that it was unfair that Leasure would walk past Martin's office to ask her to make coffee.  Plaintiff felt that Leasure should have made the coffee herself because "[a]ll she had to do was put the water in and make the coffee."  (Streeter depo. p. 62).  On one occasion, Leasure assigned plaintiff to remove and stack shelving from a bookcase in the conference room.  (Id., pp. 79-81; Leasure depo., pp. 31-33).  According to plaintiff's testimony, "[t]hat was maintenance" and "[m]aintenance is not part of the administrative assistant's job."  (Streeter depo., pp. 69-70).  Plaintiff also alleges that Leasure instructed that she was not to leave her office until informing Leasure of her whereabouts.  Employees frequently came to plaintiff's office to ask questions regarding human resources issues with First Corrections Corporation, the previous contractor.[2]  Allen, following instructions from Leasure, informed plaintiff that she could no longer have employee visitors in her office, because Leasure did not want plaintiff to "do any of FCC's business on The Bridge's time."  (Streeter depo. pp. 54-55, 110).

Plaintiff was never subjected to any type of formal discipline, nor does any written documentation exist demonstrating that The Bridge was unsatisfied with her job

---

[1]  Mayrene Martin worked as an Administrative Assistant to Leasure.  Plaintiff's scheduled work hours were from 8:00 a.m. to 4:00 p.m.  Martin was scheduled to work from 9:00 a.m. to 5:00 p.m. (Mayrene Martin aff; Streeter depo., pp. 61-62).

[2]  During the time that First Corrections Corporation operated the facility, plaintiff's assigned duties included addressing human resources issues. (Streeter depo. pp. 47-55, 110).

performance or that she was in jeopardy of being terminated.  (Allen depo. pp. 83-84).

Plaintiff complained to her immediate supervisor, Allen, that she felt as though she was

being discriminated against because of her race.  (Allen depo. pp. 92-93).  Plaintiff was

terminated from her position with The Bridge on November 15, 2002.

## DISCUSSION

The McDonnell Douglas/Burdine framework was established by the Supreme

Court for evaluating a Title VII plaintiff's claims of discrimination against an employer

where, as here, there is no direct evidence of discrimination.  See Combs v. Plantation

Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997).  The plaintiff must first make out a

*prima facie* case of discrimination.  Burdine, 450 U.S. at 252-53; Walker v. Mortham,

158 F.3d 1177, 1183 (11th Cir. 1998); Combs, 106 F.3d at 1527-28.  "Establishment of

the *prima facie* case in effect creates a presumption that the employer unlawfully

discriminated against the employee.  If the trier of fact believes the plaintiff's evidence,

and if the employer is silent in the face of the presumption, the court must enter judgment

for the plaintiff because no issue of fact remains in the case."  Id. (quoting Burdine, 450

U.S. at 254); Walker, *supra*.

If the plaintiff establishes a *prima facie* case, the employer has the burden of

producing "legitimate, non-discriminatory reasons for the challenged employment

action."  Combs, 106 F.3d at 1528 (citing McDonnell Douglas, 411 U.S. at 802).  "To

satisfy this intermediate burden, the employer need only produce admissible evidence

6

which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Combs, 106 F.3d at 1528 (quoting Burdine, 450 U.S. at 257).  If the employer articulates a legitimate, nondiscriminatory reason for its decision, the mandatory inference of discrimination arising from the *prima facie* case is destroyed.  Walker, 158 F.3d at 1184.  The plaintiff must then produce evidence "including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decisions." Combs, 106 F.3d at 1528.[3]

### *Prima Facie* Case

### Terms and Conditions of Employment[4]

The court has carefully reviewed the record and plaintiff's arguments.  The primary underpinnings[5] of plaintiff's complaint regarding the terms and conditions of her

---

[3]  Plaintiff's Title VII and § 1981 claims have the same proof requirements and use the same analytical framework.  See Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).  Accordingly, the court does not analyze plaintiff's § 1981 claims separately.

[4]  The plaintiff's complaint is devoid of specific counts.  It appears to the court that plaintiff has asserted three separate claims: (1) discriminatory terms and conditions; (2) discriminatory termination; and (3) retaliation.  (See Complaint).

[5]  Plaintiff also points to other instances which she believes evidence discriminatory treatment. Plaintiff was assigned to vacuum a floor and fifteen minutes later, Leasure instructed individuals to come in and tear down ceiling tiles on the freshly vacuemed floor.  (Streeter depo. p. 102).  Plaintiff also complains that Leasure instructed Allen to keep her office door locked, which prevented plaintiff from accessing certain files when Allen was away from her office.  (Streeter depo. p. 102-03).  According to plaintiff, Martin had unimpeded access to Leasure's office.  (Streeter depo. p. 102-03).

employment are that she did not receive a computer to perform her work while the white Administrative Assistant assigned to Leasure did; she was instructed to make coffee in the mornings when she came to work while the white Administrative Assistant Mayrene Martin "sat in her office"; she was subjected to special work restrictions such as being prohibited from having employee visitors in her office, and being instructed to obtain permission from Leasure before she left her office; and she was assigned to remove shelving from the conference room which was the type of work normally performed by maintenance.[6]  (Plaintiff's brief p. 6).

To prevail on a claim of discrimination under Title VII, a plaintiff must "establish as part of his *prima facie* case, that he suffered so-called 'adverse employment action.'" Davis v. Town of Lake Park, Florida, 245 F.3d 1232, 1238 (11th Cir. 2001).  "To prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment."   Id. at 1239 (emphasis in original).  "[T]he employee's subjective view

---

[6]  Plaintiff additionally relies upon the affidavit of Carl McKinney who worked as a case manager at the Youth Center.  In his affidavit McKinney states that "[f]rom my personal experience, Ms. Leasure did treat black employees more harshly than white employees."  (McKinney aff.). McKinney recalls that The Bridge had computers which were available for use and which were unassigned during plaintiff's tenure at The Bridge.  (McKinney aff.).  Plaintiff has also presented the affidavit of Lora Lightner, who worked as a counselor at the Youth Center.  Lightner perceived that plaintiff was being treated differently because of her race as she observed plaintiff taking down shelves in the conference room and was confused as to "why an administrative assistant was doing maintenance work."  (Lightner aff.).  The affidavits of Ricky Timbers, supervisor over juvenile training officers, and Anita Toney, a juvenile training officer, echo similar sentiments.  (Timbers aff.; Toney aff.).  The court has considered the foregoing affidavits to the extent they include factual observations by the affiants.  However, the court has disregarded conclusory statements of discriminatory treatment.

of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Id. (citing Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1453 (11th Cir. 1998)). "While not everything that makes an employee unhappy is an actionable adverse action, conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute adverse action under Title VII." Shannon v. Bellsouth Telecommunications, Inc., 292 F.3d 712, 716 (11th Cir. 2002)(quoting Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1118 (11th Cir. 2001)).

Plaintiff has failed to establish a *prima facie* case of discrimination regarding the terms and conditions of her employment, because the actions forming the basis of her claim do not constitute an adverse employment action. The actions about which plaintiff complains – not receiving a computer, making coffee either in the mornings or throughout the work day, having to remove and/or stack shelves[7] from a bookcase, having to receive permission from Leasure before she left her office, and at times being unable to access certain files from Allen's office – do not, viewed either individually or collectively, rise to the level of substantiality contemplated under Title VII. Plaintiff has failed to demonstrate that any of the job assignments or work conditions complained of amounted

---

[7] The shelves were "about a half inch thick, maybe about four feet wide." (Streeter depo. pp. 79-80). Plaintiff perceived the shelves to become heavier as more were removed. (Streeter depo. p. 80). This task took plaintiff approximately thirty minutes with the help of two individuals, Reginald Snipes, and Gene Fincher. (Streeter depo. p. 80). This was a one-time assignment.

to a serious and material change in the terms, conditions, or privileges of her employment.

In fact, the record reflects that during the period shortly after The Bridge took over operations from First Corrections Corporation, there were several manual tasks that needed to be done.   Physical tasks such as dusting furniture, cleaning restrooms, vacuuming, and moving furniture were duties engaged in by several employees, including Leasure and Martin.  (Leasure depo. pp. 26-27; Mayrene Martin aff.).[8]  Furthermore, the Administrative Assistant's job description included a catch-all provision that provided that such employees are expected to perform "[a]ny <u>additional duties or tasks</u> assigned by the Assistant Coordinator and/or Coordinator and/or his/her designee."  (Defendant's Exhibit I, job description)(emphasis in original).  There is no dispute that all of the job assignments of which plaintiff complains were assigned either by the Campus Coordinator, Leasure, or the Assistant Coordinator, Allen.   The job assignments complained of appear to fall within the broad scope of "[a]ny additional duties or tasks." (Defendant's Exhibit I).  Neither the lack of a computer, nor the work conditions imposed upon plaintiff – namely the disallowance of employee visitors and having to report to Leasure as to her whereabouts around the office – rise to the level of actions that are "objectively serious and tangible enough" to constitute adverse employment action. <u>Gupta v. Florida Board of Regents</u>, 212 F.3d 571, 588 (11th Cir. 2000)(quoting <u>Robinson</u>

---

[8]  Plaintiff denies that other employees were required to perform such tasks, but her testimony on this point is inadmissible hearsay.  (Streeter depo., pp. 82-83).

v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)); see also Cantrell v. Jay R.

Smith Mfg. Co., 248 F.Supp. 2d 1126, 1138 (M.D. Ala. 2003)("the court refuses to find

that lack of certain computer software or tools and training for Corel presentations

constitutes a materially adverse employment condition").   Thus, plaintiff has failed to

establish a *prima facie* case of discrimination with regard to her job assignments and her

lack of a computer, and with respect to the general terms and conditions of her

employment.   Defendant is, therefore, entitled to summary judgment on this claim.

<u>Termination</u>

A plaintiff may establish a *prima facie* case of discriminatory discharge by

showing: (1) that she is a member of a protected class; (2) that she was qualified for her

position; (3) that she was terminated; and (4) that she was replaced by someone outside

her protected class.   See Hawkins v. Ceco Corporation, 883 F.2d 977, 982 (11th Cir.

1989)(citing Marks v. Prattco, Inc., 607 F.2d 1153 (5th Cir. 1979)).   In lieu of showing

that she was replaced by a person outside her protected class, a plaintiff alleging

discriminatory termination may instead establish a *prima facie* case of discriminatory

termination by showing that "[her] employer treated similarly situated employees outside

his classification more favorably . . . ."   Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.

1997); see also Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1082 (11th Cir. 2005).

Plaintiff acknowledges that she was replaced by a black female.   (Plaintiff's brief

p. 20; Tangela Cox aff.).   Defendant does not dispute the fact that plaintiff is a member of

a protected class, that she was terminated, and that she was qualified for the position to which she was assigned. However, defendant contends that plaintiff cannot establish a *prima facie* case because she has failed to identify a similarly situated employee who was treated more favorably. In her brief, Plaintiff has identified Mayrene Martin as a comparator.[9] (Plaintiff's brief p. 21-23). Martin is a white female and at all relevant times was the administrative assistant to Leasure. As administrative assistants, plaintiff and Martin obviously share similar job responsibilities. However, this showing alone is not sufficient. "To make a comparison of the plaintiff's treatment to that of [white] employees, the plaintiff must show that she and the employee are similarly situated in all relevant respects . . . . In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Holifield, *supra*, 115 F.3d at 1562.[10]

---

[9] In its brief, defendant mentions Sharon Johnson, a nurse at the Youth Center, as another comparator put forward by the plaintiff in support of her *prima facie* case. (Defendant's brief p. 19). However, Sharon Johnson is not mentioned anywhere in plaintiff's brief. In her deposition plaintiff stated that she observed Martin and Johnson, in Martin's office, engaging in a "a whole lot of giggling and laughing" during work hours "[t]wo or three time a week." (Streeter depo. pp. 72-75). However, where Martin clearly had similar job responsibilities as compared to plaintiff, as a nurse who reported to Leasure, Johnson plainly did not. Plaintiff has acknowledged this fact. (Streeter depo. p. 116). Plaintiff has also acknowledged that "I don't really know anything about the nurses." (Streeter depo. 59). For these reasons, plaintiff has failed to show that she was similarly situated to Johnson.

[10] See also Anderson v. Twitchell, 76 F.Supp. 2d 1279, 1286 (M.D. Ala. 1999)("To be deemed 'similarly-situated,' the individual with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. In determining whether employees are

12

Plaintiff claims that she was admonished by Leasure for having visitor employees in her office to discuss human resources matters when she was acting as a contact person for the former employees of First Corrections Corporation. (Streeter depo. p. 110). This concerned Leasure as the employees were visiting plaintiff during work hours and she was concerned that it was keeping plaintiff from performing her primary job responsibilities. (Leasure depo. pp. 50-51). Leasure also complained of plaintiff's general lack of initiative, and Leasure cites this as the primary reason for the decision to terminate plaintiff. (Leasure depo. p. 50). On one occasion, plaintiff was asked to assist a visiting employee from another center in setting up office area supplies. According to Leasure, plaintiff stood and watched while the visiting employee moved and unpacked supplies on her own. This upset the other employee, who complained to Leasure. (Leasure depo. pp. 46-48). Leasure testified that she never observed Martin sitting idly in her office, or exhibiting a similar lack of initiative or refusal to perform an assigned task. (Leasure depo. p. 57). Furthermore, Leasure explained that the fact that Martin may have had other employees in her office would not surprise her as "Martin worked with members of the staff, everything from making sure that all of their information was correct, making sure that newly hired employees got the information that they needed. . ." (Leasure depo. pp. 57-60). Leasure explained that plaintiff's job did not require

_____

similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are [treated or] disciplined in different ways.'")(quoting Malladi v. Brown, 987 F. Supp. 893, 909-10 (M.D. Ala. 1997)).

"anywhere near" the same degree of employee contact.  (Leasure depo. p. 59).  Plaintiff observed Martin and Johnson "giggling and laughing" in Martin's office; however, plaintiff acknowledges that "[she] can't say exactly whether [the conversations] were work related."  (Streeter depo. p. 73).  After considering the record, the court concludes that the plaintiff has failed to demonstrate that Martin engaged in conduct similar to hers or was accused of engaging in conduct similar to hers.

Since plaintiff was not replaced by someone outside her protected class and has not identified a comparator whose conduct was similar to hers, she has not established a *prima facie* case of discriminatory termination.  See Morris, *supra*, 402 F.3d at 1076 ("Only after the plaintiff has made his *prima facie* case does the burden shift to the defendant).  As plaintiff has failed to establish a *prima facie* case of discriminatory termination, defendant is entitled to summary judgment on this claim.

<u>Retaliation Claim</u>

To establish a *prima facie* case of retaliation pursuant to Title VII, the plaintiff must show: (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events.  Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004)(citing Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994)); see also Smith v. BellSouth Telecomms., Inc., 273 F.3d 1303, 1314 (11th Cir. 2001).  Defendant does not dispute the first two elements.  (Defendant's brief p. 26).  Plaintiff complained to her

immediate supervisor, Allen, that she felt that she was being discriminated against because of her race, and plaintiff was subsequently terminated from her employment with The Bridge.  (Allen depo. pp. 92-93); see Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997)(voicing concern about racial discrimination to superiors is protected activity under Title VII).  Defendant contends that plaintiff cannot establish a *prima facie* case of retaliation because she cannot demonstrate a causal connection between the protected activity and her subsequent termination.

To prove a causal connection, a plaintiff is required to show only that the protected activity and the adverse employment action where not "wholly unrelated."  Shotz v. City of Plantation, Florida, 344 F.3d 1161, 1180 n. 30 (11th Cir. 2003)(citing Farley v. Nationwide Mutual Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999)).  This element is satisfied where the plaintiff provides evidence that "that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action."  Farley, 197 F.3d 1322, 1336.

In the instant case, defendant acknowledges that there is close temporal proximity between the plaintiff's complaint to Allen and her termination.  (Defendant's brief. p. 26).  However, defendant argues that there is no proof that the decision-maker, Leasure, was aware of the complaint.[11]   Leasure testified that she had no knowledge of any complaints

---

[11] Leasure testified that she made the decision to terminate plaintiff's employment, and that Allen did not have any input in the decision.  (Leasure depo., p. 51).  Leasure also stated that she discussed the issue of plaintiff's termination with Allen (id., p. 84-85), but there is no evidence that anyone other than Leasure made the termination decision.

made by plaintiff to Allen regarding the issue of racial discrimination. (Leasure depo. p. 61). This denial of knowledge by Leasure may, of course, be impeached by circumstantial evidence. <u>See</u> <u>Lippert v. Community Bank</u>, ___ F.3d ___, 2006 WL 295398, *5 - *6 (11th Cir. Feb. 8, 2006). However, that circumstantial evidence must be sufficient to permit a reasonable factfinder to conclude that the decisionmaker had actual knowledge of the protected activity. <u>See</u> <u>id</u>. at *6.

Allen testified in her deposition that she cannot recall whether she informed anyone about the complaint of racial discrimination voiced by plaintiff. (Allen depo., p. 94). Allen stated that she did make Leasure aware of the complaints regarding plaintiff's lack of a computer. (Allen depo. pp. 88-89). Plaintiff argues that it is "logical" to infer that if Allen informed Leasure of the plaintiff's complaints regarding the computer, then she surely would have informed Leasure of the "far more important" complaint of race discrimination. (Plaintiff's brief p. 15). Plaintiff also suggests that her complaints of race discrimination were "widely known throughout the administration building." (<u>Id</u>.).[12] The court concludes that the competent evidence of record is not

---

[12] In support of this contention, plaintiff cites the affidavits of Mary Martin, Valerie Coleman, Anita Toney, Ricky Timbers and Carl McKinney. (<u>See</u> Plaintiff's brief, p. 8). McKinney's affidavit makes no reference to complaints by plaintiff. (Plaintiff's Exhibit 7). Coleman and Martin state only that plaintiff complained to them about being treated "unfairly" – they do not indicate that plaintiff complained that the unfair treatment was discriminatory. (Defendant's Exhibits L, M). Plaintiff's complaints to Allen or to other employees of "unfair treatment" – if they included no reference to race discrimination – are not opposition to "any practice made an unlawful employment practice by [Title VII]" and do not constitute activity protected by Title VII's anti-retaliation provision. <u>See</u> 42 U.S.C. § 2000e-3(a). Toney, Timbers and Lightner all indicate that they personally were aware that plaintiff had complained that she was being treated unfairly because of her race. (Plaintiff's Exhibits 8-10). To the extent these three affiants state that others were also aware of the complaints, the affidavits do not demonstrate that the witnesses have personal

sufficient to permit a factfinder to infer reasonably that Leasure was actually aware of any complaint of race discrimination by plaintiff.  Therefore, plaintiff has not established a *prima facie* case of retaliation and defendant is entitled to summary judgment on this claim.

Even if plaintiff had established a *prima facie* case of discriminatory termination or retaliation, the defendants would nevertheless be entitled to summary judgment on these claims.  Defendant has articulated a legitimate reason for its termination decision and plaintiff has failed to produce evidence sufficient to establish pretext.

### Articulation of Legitimate Reason

Plaintiff was an at will probationary employee.  (Streeter depo. p. 66; Plaintiff's Exhibit 18).  As noted above, the decision to terminate plaintiff was made by Leasure. (Leasure depo. p. 51).  Leasure testified as follows regarding her decision to terminate the plaintiff:

> Generally as I earlier described, everybody was pitching in and doing whatever needed to be done regardless of what it was, and Miss Streeter as I noted, she didn't have any problems completing her tasks, she could get to a computer or that sort of thing, it was just a lack of initiative to pitch in and get things done to get – anytime tasks were given and they were completed, generally they didn't take very long, personnel would seek out and say, okay, this is completed, what's next, what else can we do, what else needs done, is there – or would just see something that needs done and go do it, and Miss Streeter would complete a task and would simply remain idle. Once that was completed, she wouldn't actively find something else to do in order to better get that administration building ready.  It was just a lack of

knowledge of the awareness of other employees.  None of the affiants state that they advised Leasure of the complaints of race discrimination.

>initiative or would just sit and wait for somebody to come and tell her what
>to do.

(Leasure depo., pp. 46-47).  Leasure stated that another reason for her decision was the incident in which an employee, Diane Hicks, from the Mobile office came to the facility to assist plaintiff and Martin in learning their jobs.  Hicks complained to Leasure that plaintiff was "just standing there and watching" while Hicks moved and unpacked office supplies on her own.  Hicks appeared to Leasure to be upset, frustrated and tired.  (Id., pp. 47-48).  Leasure also testified that she had noticed that there were times that plaintiff had other co-workers visiting in her office and that "we have a lot of things to do, we need to get them done, we don't have a whole lot of time to visit."  (Id., pp. 50-51).

Leasure's testimony satisfies the defendant's burden of articulating a legitimate nondiscriminatory reason for the plaintiff's termination.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997)("To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."); see also Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004)("'It is important to bear in mind . . . that the defendant's burden of rebuttal is exceedingly light . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof.'")(citation omitted).

**Pretext**

Plaintiff argues that the following establishes pretext: (1) The Bridge's "evolving position" regarding Streeter's complaint of discrimination; (2) the defendant's inconsistent positions regarding who was involved in the decision to terminate the plaintiff; (3) the evidence that there were unassigned computers available for plaintiff's use; (4) the inconsistencies between Allen's deposition testimony and her affidavit testimony regarding plaintiff's lack of initiative; and (5) defendant's failure to follow its progressive discipline policy.

"If the [employer's] proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004). With the exception of plaintiff's argument regarding the progressive discipline policy, plaintiff's argument concerning pretext appears to be that Leasure's articulated reasons for her termination ("lack of initiative to pitch in and get things done," having visitors in her office, and the incident with Hicks) are not credible because defendant has contradicted itself in other respects. However, the discrepancies identified by plaintiff are not sufficient to demonstrate that the reasons articulated by Leasure are pretextual.

Plaintiff contends that the defendant has asserted inconsistent positions regarding who was involved in the termination decision. Leasure testified during her deposition that she made the decision to terminate plaintiff and that Allen did not have any input or

role in the decision.   She further testified that she "reviewed" the reasons for the termination with Allen, and that she consulted with either the Executive Director Tim Naugher, or the Director of Personnel and Finance, Max Carter.[13]  (Leasure depo. 51-52, 84-85).   Carter is now deceased, and Naugher states that he is unaware of anyone who approved the decision to terminate plaintiff.  (Naugher depo. pp. 16, 92). Allen testified that she received a phone call from Leasure on the day of plaintiff's termination and that she does not remember anything about the phone call other than the instructions to remove plaintiff from the schedule.   She testified that she had not, prior to that day, had discussions with Leasure regarding whether plaintiff would be retained.   Allen further stated that she was not involved in the decision to terminate plaintiff.  (Allen depo., pp. 45-47).   Despite plaintiff's argument to the contrary, defendant has not asserted inconsistent positions regarding the identity of the decisionmaker.

Plaintiff argues that defendant denied to the EEOC and in response to interrogatories that she made a complaint of discrimination, but Allen admitted in her deposition that plaintiff complained to her that she was being discriminated against on the basis of her race.   However, these inconsistencies do not go to Leasure's credibility and

---

[13] In her argument, plaintiff misstates the evidence on this point.  She contends that Leasure testified she received approval from either Naugher or Carter, then argues that this is "inconsistent" with Naugher's testimony denying that he approved the termination.  (Plaintiff's brief, p. 16).  In the cited testimony, Naugher states that he is not aware of anyone who approved plaintiff's termination (Naugher depo., p. 92), and Leasure testifies only that she "consulted" either Naugher or Carter (Leasure depo., p. 51), and not that she either sought or obtained their approval. Leasure testified unambiguously that the decision was hers (Leasure depo., pp. 51-53), and the "inconsistencies" asserted by plaintiff do not suggest otherwise.

do not tend to show that the reasons she has articulated are pretextual.  Defendant's response to the EEOC (Plaintiff's Exhibit 13) that plaintiff did not complain of discrimination is consistent with Leasure's testimony that she was unaware of such a complaint.[14]  The responses to interrogatories were signed by Sheree Johnson, Human Resources Manager, on August 2, 2004.  (Plaintiff's Exhibit 16).  Allen's deposition took place on September 28, 2004 (Plaintiff's Exhibit 4).  Allen testified that plaintiff made a "statement" to Allen after she was tasked to remove shelving that she was being discriminated against because of her race, that Allen did not view it as a "formal complaint" but "just a statement made to me," and that she does not recall whether she told anyone else that plaintiff had made the complaint.  (Allen depo., pp. 92-94).  Had Leasure herself changed her explanations of the reasons plaintiff was terminated, this might be evidence of pretext.  However, the asserted "inconsistencies" identified by plaintiff in this regard do not tend to show that Leasure's articulated reasons are pretextual.

Leasure testified that The Bridge initially brought in three new computers, and they were assigned to Leasure, Martin and Allen.  (Leasure depo., p. 98).  Plaintiff has introduced evidence that the initial shipment of new computers to the facility included five computers.  (Plaintiff's Exhibit 11; Plaintiff's Exhibit 7, ¶ 3).  Plaintiff argues that "there is evidence that there were unassigned computers available for use by Streeter which were intentionally not assigned to her by Leasure."  (Plaintiff's brief, p. 17).  While

---

[14]  Leasure left defendant's employment in April 2003. (Leasure depo., pp. 11-12).  The EEOC response is dated February 14, 2003. (Plaintiff's Exhibit 13).

this might constitute evidence that Leasure's stated reason for not giving plaintiff a computer is pretextual,[15] it does not have any bearing on her stated reasons for the termination.

Plaintiff points to inconsistencies between Allen's affidavit (stating that she observed plaintiff "sitting idle when there was work to be performed," that she verbally counseled her and that plaintiff failed to improve her work performance) and her deposition testimony that plaintiff had, after counseling, followed Allen's instructions to come to her and ask for work if she ran out of things to do.  (Plaintiff's Exhibit 5, ¶ 7; Allen depo., pp. 84-85).  Plaintiff also cites Allen's testimony that she believed plaintiff's work to be satisfactory and she would not have recommended termination, had she been consulted.  (Allen depo., pp. 47, 86).  However, the fact that Allen disagreed with Leasure's assessment of plaintiff's performance does not demonstrate that Leasure did not believe that plaintiff's performance was unsatisfactory or that Leasure did not believe that plaintiff failed to demonstrate improved initiative.

Lastly, with respect to the issue of progressive discipline, plaintiff claims that defendant's own personnel policies dictate that it applies to newly hired employees. (Plaintiff's brief p. 18; Exhibit 12).  Defendant's policy states:

> The Bridge, Inc. shall through established pre-employment background verification, employ an individual based upon presumed competence and training to fulfill the responsibilities of their assigned position and job description.  Upon employment and following orientation; the employee fails to reach or maintain this level of competence expected and required for the position, progressive discipline will be forthcoming.  In the event an

---

[15]  As noted above, the failure to assign a computer to plaintiff does not constitute an "adverse employment action."

> employee fails to respond satisfactorily and within the established time
> period to progressive discipline designated by responsible supervisory staff,
> the individual may be subject to termination.

(Plaintiff's Exhibit 12). This policy is silent as to any distinction between probationary employees and non-probationary employees. Naugher, defendant's Executive Director, testified that the practice and policy at The Bridge was that "progressive discipline" only applied to non-probationary employees. (Naugher depo. p. 73). However, even if the plaintiff could successfully demonstrate a deviation from policy, this alone would not be sufficient. "To establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner." Rojas v. Florida, 285 F.3d 1339, 1344 n.4 (11th Cir. 2002). Plaintiff has presented no evidence that the termination policy was followed or applied differently as to probationary employees outside of her protected class. Thus, any showing of deviation from the progressive discipline policy does not establish pretext.

The court concludes that the evidence discussed above, considered as a whole and including the evidence relied on by plaintiff in support of her *prima facie* case, is insufficient to support a finding that the defendant's articulated reasons for plaintiff's termination are pretextual. Thus, for this additional reason, defendant is entitled to summary judgment on plaintiff's termination and retaliation claims.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the defendant's motion for summary judgment (Doc. #16) is GRANTED, and plaintiff's claims are due to be DISMISSED. A separate judgment will

be entered.

      Done, this 16th day of March, 2006.

                       /s/ Susan Russ Walker          
                       SUSAN RUSS WALKER
                       UNITED STATES MAGISTRATE JUDGE